MASONIC MUTUAL ACCIDENT COMPANY *v.* CAMPBELL.

Opinion delivered December 4, 1922.

1.  INSURANCE—SUIT ON POLICY—PARTIES.—Where suit is brought against an insurance company by a plaintiff claiming as sole beneficiary, it is not error to permit the joinder of another as party plaintiff who claims as joint beneficiary.

2.  INSURANCE—ACCIDENTAL INJURY—VISIBLE MARKS.—In a suit on an insurance policy indemnifying against bodily injuries caused "solely by accidental means, which injuries shall leave visible marks of contusions or wounds upon the body," evidence that insured's foot was cut or bruised by stepping on some sharp ob-

ject, whereby infection set in, which ultimately resulted in death, *held* to justify a finding that the injury was by accidental means, leaving visible marks of contusions or wounds.

3. EVIDENCE—HYPOTHETICAL QUESTION TO EXPERT.—In an action on an insurance policy covering bodily injuries resulting from accident, a question put to an expert witness as to whether it was possible for gangrene or infection to have been caused by some break of the skin that healed and became infected in healing, was not erroneous where it stated all the conditions essential to taking the opinion of the witness.

4. WITNESSES—ANSWER OF EXPERT WITNESS—RESPONSIVENESS.— Where, in a suit on an accident insurance policy, an expert witness was asked as to the possibility of infection in a wound while healing, an answer that such an infection might occur, and that the condition in the patient's limb was one of infection, and not gangrene, was responsive.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

*L. H. Southmayd,* for appellant.

The answer of Dr. Parchman, expert, should have been excluded, as it was a voluntary statement of facts entirely at variance with the allegations in the complaint, and not responsive to the hypothesis in the question asked. See 100 Ark. 518; 120 Ark. 530; 148 Ark. 456. Certain testimony of Dona Campbell was incompetent under the doctrine of non-expert testimony, or opinion evidence, and should have been excluded under the ruling in 66 Ark. 494.

*J. E. London* and *P. H. Dickerson,* for appellee.

A verdict based upon legally sufficient evidence to sustain it will not be disturbed on appeal. 97 Ark. 486; 87 Ark. 109; 104 Ark. 162; 100 Ark. 330; 103 Ark. 260; 92 Ark. 120; 101 Ark. 120; 97 Ark. 86; 86 Ark. 603; 84 Ark. 74.

McCULLOCH, C. J. This is an action instituted by appellee against appellant to recover the sum of $800, alleged to be due on a policy of insurance indemnifying against ill health, and bodily injuries resulting from accident. The policy was issued to James A. Formby, and the beneficiary originally named therein was B. E.

Lloyd, but there was a subsequent change in the designation of the beneficiary. On the face of the new designation, the appellee, Dona Campbell, who is a sister of James A. Formby, together with W. N. Formby, is named as beneficiary.

During the pendency of the action W. N. Formby was, on his own application, joined as a party plaintiff in the action. This was done over the objections of both appellant and appellee, but the court overruled the objections and permitted the action to proceed in the name of both of said plaintiffs.

There was an issue submitted as to whether the name of W. N. Formby had not been wrongfully and without authority entered in the designation of beneficiary. The claim of appellee, Dona Campbell, was that she was the sole beneficiary. The jury found in her favor on that issue, and there has been no appeal by the other plaintiff, W. N. Formby.

The policy provided for indemnity against accident disability at the rate of twenty dollars per week for not exceeding 104 consecutive weeks, where bodily injuries were caused "solely by accidental means, which injuries shall leave visible marks of contusions or wounds upon the body." Another clause of the policy affords indemnity against illness, and still another clause provides that, if death results within 180 days after an accident of the character described above, there should be paid the sum of $800 in lieu of any other indemnity. The death of James A. Formby occurred within 180 days after the alleged accident, and appellee sued for $800.

It is conceded by appellant that there is due under the policy the sum of $235 under the clause affording indemnity against illness, and there was a tender made of that amount.

The answer contained a denial of the allegation that Formby's injuries and illness resulted from accidental means, as the term is defined in the policy.

The verdict of the jury was for $800, the total amount of indemnity allowed under the policy.

The first contention for reversal of the case is that the court erred in permitting W. N. Formby to be joined as a party plaintiff. It is argued that the effect of this was to mislead the jury and to divert them into settling merely a controversy between the two claimants. We do not think there was any error committed in this respect. Both of the parties claimed to be beneficiaries—appellee claiming to be the sole beneficiary, and W. N. Formby claiming to be a beneficiary jointly with Mrs. Campbell. The effect was the same as if two separate actions had been brought by the several claimants and the actions consolidated under the statute on the ground that the issues were the same in each case. Crawford & Moses' Digest, § 1081; *St. L. I. M. & S. Ry. Co.* v. *Broomfield,* 83 Ark. 288. Appellant was not interested in the issue between the two claimants, and that feature of the case passes out of the judgment in appellee's favor, from which no appeal has been prosecuted by the other claimant.

It is next contended that the evidence was not legally sufficient to show that the illness of Formby resulted from accidental means which left "visible marks of contusions or wounds upon the body."

According to the proof, Formby resided during the summer of the year 1919 at the town of Marlow, Oklahoma, and was engaged in operating a swimming pool, and was also employed to attend to the operation of an engine which produced power for pumping water over a dam a short distance from the swimming pool. The contention of appellee at the trial below was that the injury occurred during the month of August, and that it resulted from accidental means while Formby was engaged in his ordinary duties of cleaning out the swimming pool and in walking back and forth from the pool to the engine to which he was giving attention. The theory of appellee is that Formby injured the big toe on one of his feet, either by stepping on a stone or piece of glass, while he was cleaning out the swimming pool, or by cutting it on a piece of sharp cane while he was walking in his bare

feet from the pool to the place where the engine was located.

The first account, in the testimony, of the injured condition of Formby's foot begins with September 5, 1919, when, according to the testimony of a physician in Oklahoma, Formby was treated and his foot or toe was found to be in a gangrenous condition, resulting either from diabetes or *arterio sclerosis*. This physician testified that there was gangrene, and that it resulted from the causes named above. After treating the disease, the physician amputated the toe, and, as this did not arrest the progress of the disease, he made a second and third amputation, the last amputation being of the leg just below the knee.

Another witness testified in corroboration, and the testimony tended to show that the condition of Formby's toe resulted from diabetic or senile gangrene, and not from accidental causes.

Other witnesses introduced by appellee testified that early in September they examined Formby's foot and observed a discolored bruise on the ball of his big toe, which extended down and across the ball of his foot. There were several of these witnesses, including appellee herself and her brothers, as well as other witnesses, and the testimony of each tended to show that there was an observable bruise and discolored condition of Formby's toe, that it seemed to come to a head after being poulticed, and that the place suppurated and broke. All of these witnesses were non-experts, but a physician at Van Buren was introduced as an expert witness, and he testified, giving his opinion that gangrene does not result without some kind of external injury. This witness testified also that he examined Formby's leg after the last amputation, and that in his opinion the condition had never been gangrenous, but had resulted from infection. He also testified that a person "might have an infection by a breaking of the skin where an instrument is infected; the place may heal up and be so slight that he would not notice it."

Another witness, who was associated with, or worked for, Formby in the operation of the swimming pool, testified that Formby washed out the swimming pool every day, and in doing so he stripped off his clothing and put on a bathing suit and went into the water to clean out the pool as the water ran out, and that he often observed in the bottom of the pool, in the mud, small pieces of stone or broken glass and blocks of wood, sometimes coins. He also testified that Formby went back and forth from the swimming pool to the dam where the engine was operated, being garbed only in his bathing suit, and was barefooted, and that he had to walk through a patch of cane. The testimony of this witness went only to show an opportunity for Formby to receive an accidental injury on the bottom of one of his feet.

We are of the opinion, after consideration of all the evidence, including that of the expert witness, that the jury could have drawn the inference that Formby's foot was cut or bruised by accidental means, that the injury left "visible marks of contusions or wounds," and that this was the cause of the condition which brought about Formby's death. There was, in other words, legally sufficient testimony to support the verdict. There was other testimony introduced by appellant tending to show that Formby's injuries were not accidental, and that there was merely an illness resulting from natural causes. This, however, made an issue for the jury, which has been settled by the verdict.

Finally, it is contended that the court erred in admitting the testimony of Dr. Parchman, introduced as an expert. The question and answer, both of which were objected to, read as follows:

"Q. Doctor, you have already been qualified. Taking as a basis the fact that bruises upon the ball of the foot, a black or discolored place that afterwards suppurates and becomes filled with pus, I will ask you now, if you were called upon to examine that kind of an injury and that kind of a condition, would it have been possible for that to have been caused by some break

or rupture of the skin that had healed and become infected in healing? A. A man might have an infection by a breaking of the skin where an instrument is infected; the place may heal up and be so slight he would not notice it. I think it was purely an infectious condition when I saw him. The flap was not gangrenous, it was an infected flap. No gangrene about it, in my judgment—never was."

Counsel for appellant objected to the question on the ground that it did not include undisputed facts, and then objected to the answer of the witness on the ground that it was not responsive to the question. We are of the opinion that each of the objections was properly overruled by the court. Appellee had introduced testimony tending to show that there was a bruised condition of Formby's toe, which had suppurated and then broken, and she was entitled to take the opinion of the expert as to whether or not this condition could have resulted from a healed wound which had become infected. All of the conditions were stated which were essential to taking the opinion of the witness on this subject, and there was no error in the form of the question.

We also conclude that the answer of the witness contained no inadmissible matter, even though it was not strictly confined to the question propounded. The first sentence in the answer was responsive to the question, and the witness stated that infection might follow from a breaking of the skin, and that the place might heal up so that it would not be noticed. The witness then proceeded to state that he saw Formby's leg after it was amputated, and that it did not show a gangrenous condition, but that the condition resulted from infection.

The discussion thus far covers all of the grounds urged for reversal of the judgment, and, as before stated, we have reached the conclusion that there is no error in the record. The issues were submitted to the jury upon correct instructions.

The judgment is therefore affirmed.