Irene **LOCKHART**, Plaintiff,

v.

Edward Scott **O'HARA**, Defendant.

No. F-73-C-18.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Aug. 21, 1974.

---

5. Most of these were discussed and distinguished in *Apartment Communities*.

John W. Cloer, Springdale, Ark., for plaintiff.

H. Franklin Waters of Crouch, Blair, Cypert & Walters, Springdale, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

On April 8, 1973, plaintiff, Mrs. Irene Lockhart, commenced this action against the defendant, Edward Scott O'Hara, seeking to recover damages allegedly suffered by her as a proximate result of the alleged negligence of the defendant in the driving of a 1970 model Chevrolet pickup truck.

The plaintiff is a citizen of Arkansas and a resident of the City of Springdale in Washington County, Arkansas. The defendant, Edward Scott O'Hara, is a citizen of the State of Oklahoma and resides on R.F.D. 2, Spiro, Oklahoma.

The matter in controversy exceeds the sum of $10,000, exclusive of interest and costs.

In paragraph 3 of the complaint the plaintiff alleged:

"That on January 17, 1972, at about 11:40 a. m. the plaintiff was driving and operating a 1970 model Chevrolet sedan in a northerly direction on U.S. Highway No. 71 in the city limits of the City of Springdale, Arkansas, at a point where the Shady Grove Avenue intersects said highway, and at the same time and place defendant, Edward Scott O'Hara, was driving and operating a 1970 model Chevrolet pickup truck also in a northerly direction and following the automobile driven by the plaintiff. At said time and place the said defendant, Edward Scott O'Hara, negligently drove and operated his said truck and caused the same to strike with great force and violence the rear end of the automobile driven by the plaintiff."

In paragraph 6 of the complaint, the plaintiff alleged that she sustained "a severe whiplash injury and injury to her head, neck, shoulders, arms, back, cervical and lumbar spine, and the bones, muscles, flesh, ligaments, nerves and other tissues of the plaintiff's body were injured and damaged and the said injuries are permanent. As a result of said injuries the plaintiff suffered extreme and excruciating pain and mental anguish, and the plaintiff has been under the care of a physician. That as a result of said injuries, plaintiff's back, spine, and ligamentous structure are degenerating causing more pain as time goes by. That on account of said injuries the plaintiff has incurred and will in the future incur medical bills and expenses for proper medical care, in the total sum of $1,000.00. The plaintiff's said injuries are permanent, and on account of said pain, suffering and her said personal injuries the plaintiff has been damaged in the sum of One Hundred Thousand ($100,000.00) dollars."

The plaintiff further alleged that the defendant was negligent in the operation of the truck driven by him in that he failed to keep and maintain a proper lookout for other persons and property on the highway; he drove and operated the truck at a high and unlawful rate of speed under the conditions then existing; he failed to keep and maintain the truck under reasonable or proper control; and followed the automobile being driven by plaintiff too closely and that, after discovery of the position of the plaintiff's automobile on the highway, he failed to exercise ordinary care to prevent his truck from striking the automobile of plaintiff.

On April 20, 1973, the defendant filed his answer, in which he denied the allegations of negligence charged in the complaint, and affirmatively alleged that the collision referred to in the complaint was caused by the acts of a third party over which he had no control, and further denied that plaintiff received the injuries in the collision of the truck and the automobile as alleged in the complaint.

Jurisdiction based on diversity and amount in controversy exists. 28 U.S. C.A. § 1332.

 The case was tried to the court without a jury on August 13, 1974, and at the conclusion of the evidence the court announced to the parties that it was of the opinion that the proximate cause of the collision of the truck being operated by defendant and the automobile being operated by plaintiff was the negligence of the defendant in the operation of the truck. Counsel for defendant did not admit the defendant was negligent in the operation of the truck, but the uncontradicted evidence showed that plaintiff was driving north on U.S. Highway 71 and defendant was following plaintiff as they approached the intersection of Shady Grove Avenue and said highway. At that time, approximately 11:40 a. m., the traffic was rather heavy on the highway and the avenue. Neither vehicle was being operated at an excessive speed, but because of the traffic and the presence of an automobile in front of plaintiff's vehicle, she was required to reduce the speed of her auto-

mobile. Likewise there was traffic behind the defendant, and while the evidence did not show the exact distance between the automobile of plaintiff and the truck of defendant prior to the collision, the defendant reduced the speed of his truck by the use of his brakes and skidded a distance of between 20 and 21 feet into the rear of plaintiff's automobile. The testimony did not disclose how close the traffic following the truck was at that time, the extent of the collision, or the distance, if any, the vehicles moved after the collision, but the court is convinced that the defendant was negligent in the operation of his truck in failing to maintain a proper lookout and following plaintiff's automobile too closely under the conditions then existing and in negligently failing to operate the truck in a reasonable and proper manner.

The court further stated that in its opinion the only question for determination was the nature and extent of the personal injuries received by plaintiff, and requested counsel to submit, without exchange between counsel, a summary of their opinion of the facts and extent, if any, of the injuries received by the plaintiff.

In response to the above request of the court, counsel for plaintiff on his summary contends that the plaintiff suffered personal injuries caused by the collision of the automobile and truck and that her physical condition was aggravated by the injuries she sustained. That the evidence supports the following propositions: (1) that plaintiff was free from pain and disability in her neck, shoulders, and arms prior to January 17, 1972; (2) that she sustained serious and permanent injuries to her ligamentous structure of her cervical spine, aggravating her arthritis; (3) that plaintiff is entitled to the full amount of the damages resulting from her injuries and aggravation of her condition; (4) that the law does not require a separation of the injuries from the preexisting disease and physical condition she may have had at the

time, but that the aggravation and personal injuries are considered part of the injuries and subject to recovery.

Counsel for defendant contends that plaintiff failed to prove the nature and extent of her injuries and any damages; that the evidence given by the physicians was that none of them could to any degree of medical certainty separate the personal ailments from which plaintiff was suffering before the accident from those that might have been caused by the accident; that the plaintiff has failed to meet the burden of proof in that respect.

■ Since the jurisdiction of the court is based upon diversity and the amount in controversy, the law of Arkansas is controlling.

In Owen v. Dix (1946), 210 Ark. 562, 196 S.W.2d 913, the court quoted with approval from its opinion in St. Louis S. W. Ry. Co. v. Lewis, 91 Ark. 343, 121 S. W. 268, and also from 38 Am.Jur., § 82, p. 741, and 14 Am.Jur., § 81, p. 490, and after considering its opinion in St. Louis S. W. Ry. Co., supra, and the quotations from Am.Jur. held 210 Ark. at page 566, 196 S.W.2d at page 915:

> "The rule appears to be well settled that when a defendant's negligence aggravates, or brings into activity, a dormant or diseased condition or one to which the injured person is predisposed, the defendant is liable to the injured person for the full amount of the damages which ensue, notwithstanding such diseased or weakened condition."

In Adkins v. Kelley (1968), 244 Ark. 199, 424 S.W.2d 373, the court at page 206 of 244 Ark., 424 S.W.2d at page 376 said:

> " 'If Arkansas Model Jury Instructions (AMI) contains an instruction applicable in a civil case, and the trial judge determines that the jury should be instructed on the subject, *the AMI instruction shall be used unless the trial judge finds that it does not accurately state the law. In that event he will state his reasons for refusing the*

*AMI instruction.* Whenever AMI does not contain an instruction on a subject upon which the trial judge determines that the jury should be instructed, or when an AMI instruction cannot be modified to submit the issue, the instruction on that subject should be simple, brief, impartial, and free from argument.' (Emphasis supplied.)"

■ Thus, in Arkansas the Judge is required to instruct the jury in accordance with the Arkansas Model Jury Instructions unless the trial Judge finds that the instruction does not contain an accurate statement of the law. Also, in the trial of cases to the court without a jury, the trial judge must follow the applicable principles set forth in the instructions that would be applicable were the case being tried to a jury.

The provisions of Am.Jur., referred to by the court in its opinion in Owen v. Dix, supra, now appear in 22 Am.Jur.2d, Damages, §§ 122–123. In § 124, p. 176, the learned author states:

"It is clear from the discussion in the preceding sections that while an injured person is entitled to recover full compensation for all damage proximately caused by the defendant's act, even though his injuries may have been aggravated or activated by reason of his pre-existing physical or mental condition, the defendant can be held liable only to the extent that his wrongful act proximately and naturally aggravated or activated the plaintiff's condition. The defendant is not liable for damages for injuries attributable solely to the original condition. Accordingly, and not infrequently, the defendant contends that the real cause of the personal injury sued for was an identified abnormal physical or mental condition from which the plaintiff suffered before the accident or incident in suit. This contention may take any of the following forms: (1) in its simplest form, the defendant asserts that before the accident the injured person had the same condition in the same form and in the same degree; (2) more commonly, he asserts that before the accident or incident in suit the injured person had the same condition, and that although the post-accident condition is more serious or somewhat different in form from the pre-existing condition, the postaccident condition is actually the result of normal progress of the pre-existing condition, unaffected by the accident or incident in suit; (3) the defendant may admit that the injured person did not suffer from the condition complained of before the accident, but he urges that the postaccident condition developed naturally from a different pre-existing condition. The determination of the issue thus raised depends upon the evidence introduced in the individual case, and in the last analysis becomes a matter of the sufficiency of the proof and the circumstances of the individual case. The sufficiency or insufficiency of the proof to overcome the pre-existing condition defense seems to turn on the evidence as a whole rather than on the introduction or omission of any particular type of evidence."

In support of her contentions, plaintiff quotes a portion of AMI 2203, but entirely omits the following: "However, you may not award him damages for any pain, mental anguish, disability which he would have suffered even though the accident had not occurred." AMI Civil 2d, p. 284.

In Continental Southern Lines v. Moses (1965), 239 Ark. 905, 395 S.W.2d 20, the trial court in following Owen v. Dix, supra, instructed the jury as follows:

" 'If you find that the plaintiff is entitled to recover you are instructed that if you find from a preponderance of the evidence that the plaintiff received injuries which aggravated a condition or conditions from which he was suffering and that such injuries, if any, from which he was suffering or to which he was predisposed, if any, excited or caused the condition

from which he now suffers, if you find he is suffering disability, then he is entitled to recover to the full extent of whatever you find his injury so received to warrant, notwithstanding the fact that you may find he was suffering from some abnormalities prior to the injuries sustained by him.' "

On appeal the Supreme Court of Arkansas said beginning at page 906 of 239 Ark., at page 21 of 395 S.W.2d:

"Appellant objected generally and specifically contending that the instruction was ambiguous, confusing, misleading, and an incorrect statement of the law. We agree with the appellant. This instruction can be construed to tell the jury that if it finds the pre-existing condition of appellee's health caused the condition from which appellee now suffers, without considering any subsequent injury from the accident complained of, then the jury could compensate appellee to the full extent of his present disabilities."

The purpose of inserting in AMI 2203 the words, "However, you may not award him damages for any pain, mental anguish, disability which he would have suffered even though the accident had not occurred," is to give the defendant the benefit of any evidence establishing or tending to establish that the plaintiff would have suffered pain, disability mental anguish, etc., even though the accident had not occurred.

■ In an annotation appearing in 2 A.L.R.3d, beginning at page 290 and extending to 375, the annotator cites and quotes from a great many cases where the various questions arising in cases similar to the one now before the court were discussed and determined, and it is perfectly clear that the question of the effect of the arthritis and other physical difficulties of plaintiff prior to and on January 17, 1972, the date of the accident, should be considered by the court. The sufficiency or insufficiency of the evidence to establish the alleged aggravation of the pre-existing condition is

determined from the evidence as a whole rather than on any particular type of evidence.

■ Under the law of Arkansas, a plaintiff claiming damages based on negligence is required to prove three essential propositions: (1) that he has sustained injuries; (2) that the defendant was negligent; and (3) that such negligence was a proximate cause of the damages. In the trial to a jury the court must instruct the jury that the plaintiff has the burden of establishing each of these requirements, and, of course, in trials to the court without a jury, the court must determine whether the evidence is sufficient to establish each of the propositions. AMI Civil 2d, 203, p. 13.

■ The court has heretofore held that the only question for determination was the nature and extent of the personal injuries received by plaintiff and whether the collision aggravated a condition or disease that already existed and that predisposed her to injury to a greater extent than another person.

The plaintiff in support of her claim of aggravation introduced Dr. Coy C. Kaylor, an eminent orthopedic surgeon. The defendant introduced Dr. Tom D. Whiting, a highly skilled "family doctor" of Springdale, Arkansas. The plaintiff is now and was a patient prior to January 17, 1972. Also, the defendant called Dr. Joe Paul Alberty of Fort Smith, Ark., who is an experienced and thoroughly trained orthopedic surgeon and enjoys an excellent reputation.

The plaintiff and her sister were returning to Springdale, Arkansas, their home, from a vacation in Florida. Plaintiff was the driver at all times during the trip, and while in the State of Georgia plaintiff's sister, Mrs. Lucille Warnock, suffered a slight injury which delayed their arrival in Springdale until approximately 11:40 a. m. on January 17, 1972.

Immediately after the collision, a police officer arrived and made an investigation. The plaintiff made no com-

plaint of being injured at that time and drove the automobile from the place of the collision to her home. Upon arrival at home the plaintiff took her sister to see the family physician, Dr. Whiting, about the injury in Georgia.

On January 19, 1972, she went to the office of Dr. Kaylor who examined her and mainly complained about her neck at that time. She also complained of having some pain in both arms, and the examination made by Dr. Kaylor consisted of examining her range of motion, checking her neck for muscle spasms and for obvious deformities which she didn't have. She did have some muscle spasms and limited motion. She was 72 years of age. The X-rays of her cervical spine were negative for fracture or dislocation. They did show degenerative changes consistent with a 72-year old lady. On February 21, 1972, she was seen again by Dr. Kaylor, and again complained of some pain and muscle spasm. Her motions at that time were not normal. They were quite poor. The doctor prescribed Valium, which is a combination of muscle relaxant and a drug to calm the nerves and tension. On March 10, 1972, she was again examined by Dr. Kaylor, but there was no substantial change. On May 12 she was feeling better. Her motions were improved apparently by Valium. On June 30, 1972, she still complained of having pain in her neck and was having headaches which apparently was the only pain which she was suffering.

On August 2, 1972, she was feeling better but had restricted motion of her cervical spine and muscle spasm. On January 26, 1973, additional X-rays were made which showed some increased changes on the lateral views. She advised the doctor at that time that she had had migraine headaches but that they had disappeared.

On September 7, 1973, she still complained of pain in her neck and also in the low back. That is the first time that she had complained of trouble in her low back, particularly the lumbosacral level, but she had not complained of any pains in her back until that date. On September 17, 1973, the doctor reported to her attorney, Mr. Cloer, in which he stated that the plaintiff was still having some muscle spasm and a loss of motion of the cervical spine, but added that "much of this, however, is due to preexisting arthritis. The patient is over 70 years of age and in my opinion is not going to get much better. * * * No doubt she has suffered some pain, however, I don't think that the amount of pain she has suffered has been excruciating and has not been to the point where she demands much in the way of medication."

On cross examination, Dr. Kaylor was asked, "Could you find any evidence that you could lay your finger on that she was injured in the accident?" The doctor answered: "Her statement that she was struck from, that her car was struck, from the rear, and that she complained of pain in the neck would cause me to assume that her pain in the neck was due to damage in the ligamentous structure and that the sign of limitation of motion and muscle could be due to ligamentous injury and to the aggravation of preexisting arthritis which no doubt was present before the accident."

Question: "All right, now these things could also be caused, could they not, Doctor, by the arthritic condition which existed prior to the accident; could it not?"

Answer: "Right, yes, could be."

Dr. Kaylor further testified that he could not make any rating of the extent of the injury on someone of the age of plaintiff with the problems that they would normally have just from being that age.

On January 28, 1972, the plaintiff called on Dr. Whiting, and made complaints similar to what she had made to Dr. Kaylor. Her complaints were not uniform at all times, and Dr. Whiting told her to continue seeing Dr. Kaylor.

Both treating doctors, Kaylor and Whiting, agreed that she was prior to and after the accident suffering from

arthritis and a closing of the space between the vertebrae along with other ailments which are usually found in a person 72 years old.

On May 14, 1974, the plaintiff was examined by Dr. Alberty, at which time she complained of neck pain, a pain between the shoulder blades and headaches. She did not complain of any pain in the lower back or in her legs. The X-rays disclosed a degenerative cervical disease with a superimposed hyperextension of soft tissue injury to the neck. Dr. Alberty agreed with the other doctors that the disease or condition complained of predated January 17, 1972. The examination made by Dr. Alberty consisted of sensory testing of both upper extremities as well as motor function thereof. She had a normal range of motion of the cervical spine. The only positive finding was the reported discomfort to deep palpitation in the paravertebral area. She made no complaint of lower back problems or any leg problems. In answer to the question if the doctor found any disability as a result of anything, his answer was, "by history only."

The evidence established that the plaintiff's complaints of pain in various portions of her body increased after the accident. All the doctors agreed that she would not require any additional treatments, and giving the testimony of all the physicians the most favorable interpretation, the court finds from all the evidence that it is insufficient to establish there was any aggravation of the preexisting disabilities from which the plaintiff was suffering at the time of the collision. None of the doctors could find or testify to a medical certainty of any aggravation caused by the collision, and the court finds there was none.

However, the court finds that plaintiff is entitled to be compensated for the pain, suffering and mental anguish suffered by her as a direct result of the collision, and after considering all of the evidence along with the age of the plaintiff and her preexisting diseases, the court cannot award damages in any sum

approaching the amount sued for, and is convinced that a recovery of $2,000 for pain, suffering and mental anguish and $200 for medical expenses is ample.

Therefore, judgment is being entered finding for plaintiff and assessing her damages as $2,200.