ROBERT T. ROGERS, d/b/a ROGERS HARDWARE AND LUMBER COMPANY *v.* FRANK LYON COMPANY

5-6082                                    489 S.W. 2d 506

Opinion delivered January 29, 1973

*Wommack & Lineberger*, for appellant.

*Rose, Barron, Nash, Williamson, Carroll & Clay*, for appellee.

JOHN A. FOGLEMAN, Justice. Frank Lyon Company recovered judgment for $2,207.94 in a suit on open account against Robert T. Rogers doing business as Rogers Hardware and Lumber Company. Appellant contends that the judgment is not supported by substantial evidence and that the circuit judge erred in overruling his motion for new trial. We find no reversible error.

Appellee offered numerous appliance shipping orders to sustain its allegations that Rogers was indebted to it in the total sum of $5,679.22 for merchandise sold and delivered to the Rogers Hardware and Lumber Company during 1969 and 1970. These were introduced through Owen Morrow, Manager of Credit Sales for appellee. Appellant argues that appellee failed to meet its burden of proof because the witness had no personal knowledge of the transactions purportedly reflected by those records. The records showed that some of the merchandise was sold to another party, and no proof of actual delivery of the merchandise was offered.

Morrow was the custodian of the records introduced, and stated that he was familiar with the account, which had originated in 1966 or 1967. He testified that the records introduced were kept in the regular course of business. Morrow explained the process followed by appellee in reference to this and other accounts as follows: Each invoice originates from a phone call from Rogers or one of his employees or from Lyon's representative in the territory, and orders were filled by shipping merchandise from Lyon's Fort Smith or Little Rock branch to Rogers Hardware Company. The invoices were supported by "appliance shipping orders" based on these orders and were prepared on multi-copy forms, the original being kept in the Lyon Company files, the first copy accompanying the shipment to the customer, the second kept in the credit files and the third kept in the accounting files. The company's computer then posted each invoice to the purchaser's account and billed the customer at the end of each month. An IBM copy of the invoice was transmitted to the customer on the day following its processing.

Morrow identified an IBM summary of the Rogers account, a copy of which he said was mailed to the customer. Copies of appellee's shipping orders and the computer print-out of the Rogers account showing a balance due amounting to $5,679.22 were admitted into evidence. The last date the records of the Rogers account indicated shipment of merchandise to Rogers was July 7, 1970, and the last credit appearing on the account was for $82.96 entered on March 16, 1971. Morrow also identified a memo from Rogers dated September 15, 1970, and testified that he had no recollection of any item of the account having been questioned by any Rogers employee and that the files did not indicate any such question. One invoice for $1,799.55 dated November 24, 1969, for merchandise shipped to Hiwasse Homes was originally charged to Rogers' account, but for some reason Morrow could not readily explain was transferred to an account of Hiwasse Homes, established February 9, 1970. Other invoices of $199.95 and $1,920. Morrow said, were also transferred to Hiwasse Homes. Morrow stated that Charles E. Simms was credit manager of Frank Lyon Company, and, as such, in charge of the overall extension

of credit and collections at the time of the transactions with Rogers, and that he (Morrow) handled distressed accounts and had nothing to do with this account during 1969 and 1970.

Five of the orders totalling $4,665.10 indicated upon their faces that they were for goods sold to Borg-Warner Acceptance Corporation. Morrow had no connection with the shipping department and no personal knowledge of the shipping of the merchandise represented by any of the written orders. His entire testimony was based upon company records. A statement of the account showing a balance due of $2,329.14 was exhibited on cross-examination of Morrow, who said that it was prepared by Sims on August 27, 1970. During cross-examination Morrow also identified a copy of a letter of November 17, 1970, addressed to Rogers, stating that the account amounted to $2,133.40; a computerized statement dated December 24, 1970, reflecting a balance of $1,885.05; and a statement of May 26, 1971, showing a credit balance of $21.20. Morrow explained that one of the Borge-Warner invoices (for $1,265.55) was for merchandise to be sold to Borg-Warner and shipped to Rogers by agreement among the parties, but charged to Rogers when Borg-Warner refused to accept it.

Rogers denied owing appellee for invoices for $203.83, $1,265.55, $404.90 and $169.95, totalling $2,044.23, saying that he had paid Borg-Warner for them but could not say whether he actually received the merchandise or not. Morrow testified that Borg-Warner refused to finance these purchases by Rogers on a floor plan and that the records showed that the merchandise was then charged to Rogers and a corrected billing sent to him.

He explained that the three merchandise orders for a total of $3,919.50 were charged to Hiwasse Homes, after he advised Sims that the refrigerators listed on them had actually been shipped to Hiwasse Homes. He said that Sims left trade acceptances dated July 15, 1970, for this merchandise for signature by Hiwasse Homes and transferred the items to the Hiwasse Homes account in 1969, but it is admitted that the acceptances were never signed and returned to appellee. Morrow testified that the trans-

fer of these charges to the Hiwasse Homes account was made when the trade acceptances were prepared. Rogers stated that these invoices were not again charged to his account until after the suit was filed and denied that he had ever agreed to pay for this merchandise. According to Rogers he was the owner of 54% of the stock of Hiwasse Homes, organized in November of 1969, and Rogers Hardware Company made some sales to Hiwasse Homes in 1970. Each appliance shipping order reflected a date of shipment, and a bill of lading number. Most orders indicated the identity of the carrier.

The records introduced through Morrow were properly admitted in evidence under Ark. Stat. Ann. § 28-928 (Repl. 1962). See *Walker* v. *State,* 241 Ark. 300, 408 S.W. 2d 905, appeal dismissed, 386 U.S. 682, 87 S. Ct. 1325, 18 L. Ed. 2d 403 (1967); *Swafford Ice Cream Company* v. *Sealtest,* 252 Ark. 1182, 483 S.W. 2d 202. Morrow's lack of personal knowledge might have affected the weight given his testimony, but not its admissibility. The jury might well have found for appellant on the testimony offered, or returned a verdict for appellee in some lesser amount, but we cannot say that there was no substantial evidence to support the verdict. While we cannot say how the jury arrived at its verdict, it is obvious that it found for Rogers on items totalling $3,471.28, since the verdict was that much less than the amount indicated by the statement on which appellee sought to recover.

Judgment on the jury verdict rendered December 3, 1971, was entered on January 13, 1972. On February 8, 1972, appellant filed a motion for new trial on account of newly discovered evidence. He alleged that on January 31, 1972, he discovered that appellee had filed a verified complaint to institute a suit in the Circuit Court of Benton County against Hiwasse Homes, Inc., alleging that it had sold and delivered goods and appliances listed on invoices attached to the complaint to Hiwasse Homes; that on May 25, 1971, judgment by default had been entered for the amount sought in this complaint; that, thereafter, appellee altered four invoices for merchandise priced at a total of $3,919.60, which had formed a basis for the judgment against Hiwasse Homes, to make it

appear that Rogers was the debtor; that this judgment barred the action against Rogers on these invoices; that had he discovered the Hiwasse Homes judgment prior to the trial of this case, the result of the trial would have been different; that the alteration of the invoices constituted a fraud upon him and upon the court as well.

Appellee's response denied these allegations and alleged that none of the matters alleged by appellant would materially affect his substantial rights and that appellant, with reasonable diligence, could have discovered the judgment against Hiwasse Homes. This motion for new trial was denied after the court heard evidence. The trial court found that the judgment could have been discovered by appellant and produced at the trial by the exercise of reasonable diligence, that the newly discovered evidence did not materially affect the substantial rights of appellant and that there was no evidence that appellee had wrongfully or unlawfully altered any of the invoices upon which its cause of action against Rogers had been based or that appellee had practiced a fraud upon appellant or the court.

The granting or denial of a motion for new trial on account of newly discovered evidence, or in any case, is a matter lying within the wide latitude of the sound judicial discretion of the trial judge, whose exercise of that discretion will not be reversed in the absence of manifest abuse. *Dorey* v. *McCoy,* 246 Ark. 1244 (Supp. Op. Reh. 1248A), 442 S.W. 2d 202; *Arkansas State Highway Commission* v. *Owen,* 241 Ark. 1012, 411 S.W. 2d 304; *Davis* v. *Ralston Purina Company,* 248 Ark. 1128, 455 S.W. 2d 685. Newly discovered evidence is one of the least favored grounds for a new trial. *Gross* v. *State,* 242 Ark. 142, 412 S.W. 2d 279. See also, *Arkansas State Highway Commission* v. *Owen,* supra. The burden is upon the movant to establish that he could not with reasonable diligence have discovered and produced the evidence at the time of the trial, that the evidence is not merely impeaching or cumulative and that the additional testimony would probably change the result of the trial. *Halbrook* v. *Halbrook,* 232 Ark. 850, 341 S.W. 2d 29.

The circuit judge, in denying the motion, stated that the exercise of the required diligence by appellant was questionable, that there was no fraud on the part of appellee, and that evidence to support the contention that the items covered in the Hiwasse Homes judgment had been charged by appellee to that corporation, rather than to appellant, was before the jury, and that the jury for some reason gave credit in its verdict for $3,471.28 against the amount appellee claimed to be due.

Rogers testified that he discovered the Hiwasse Homes judgment on January 31, 1972, when he went to the courthouse to obtain a photostatic copy of the court's docket in this case (No. 72-71 in the circuit court) and accidentally noted the case of Frank Lyon Company v. Hiwasse Homes (No. 73-71). The complaint in that case was dated March 18, 1971. Charles E. Sims testified that the invoice for these items was originally on Rogers' account and charged to Hiwasse Homes at Rogers' request upon the understanding that trade acceptances covering the items would be forwarded to appellee and then retransferred to Rogers' account and were included in statements sent him after the trade acceptances were not received and after the judgment against Hiwasse had been entered. Sims said that the charge of the items to Hiwasse Homes was made in order that the account would be in accord with the trade acceptances. Sims also testified that statements of the Hiwasse account showing these items had been sent to Rogers, who had agreed to send the trade acceptances in the first place. There was no evidence of any payment or satisfaction of the Hiwasse judgment.

When we consider that evidence that went to the jury disclosed the fact that the items in question had been transferred from the Rogers account to that of Hiwasse Homes and back again, that the jury did not return a verdict for the full amount sued for, that there is evidence indicating statements showing the transfer and retransfer of the charges had been sent to Rogers, and that he had requested the transfer on the basis of an agreement he failed to keep, we cannot say that the "newly discovered" evidence would be more than cumulative or impeaching or that it was probable, rather than just

possible, that the evidence would change the result of the trial or that an abuse of discretion is indicated.

Furthermore, the fact that the Hiwasse judgment was a matter of public record for more than six months before the trial in this case could properly be considered as indicative of a lack of diligence. See *Stockton* v. *Baker,* 213 Ark. 918, 213 S.W. 2d 896. While it may well be said that every person sued is not charged with the responsibility of searching all the court dockets, even in the county in which he is sued, to see if someone else has been sued on the same cause of action by the same plaintiff, the contentions made by Rogers that Hiwasse Homes was liable for the particular items with which he was charged might well have prompted some inquiry on his part. We reiterate that the complaint against Hiwasse is not a totally new admission on the part of Lyon, for it is consistent with that evidenced by statements of account by Lyon said to have been sent to Rogers before and after the transfer, before and after the Hiwasse judgment and before and after the retransfer of the charges.

When we view the total picture portrayed by the evidence on the original trial and that on motion for a new trial, we are unable to say that the trial court abused its discretion. We are not now concerned with the possibility of double collection of these items by Lyon, which appellant fears. It does not appear that either party has paid anything on either judgment. That will be a matter for consideration when payments are made and appropriate credit not given.

The judgment is affirmed.