CBM OF CENTRAL ARKANSAS, d/b/a COLLECTION
CONSULTANTS, INC. *v.* Geneva York BEMEL

81-106                                             623 S.W. 2d 518

Supreme Court of Arkansas
Opinion delivered November 9, 1981

*Donald H. Bacon,* for appellant.

*James R. Cromwell,* of Central Arkansas Legal Services, Inc., for appellee.

GEORGE ROSE SMITH, Justice. This is a tort action by the appellee, Mrs. Bemel, against the appellant, Collection Consultants, a company that collects past-due accounts. The plaintiff asserts that the defendant's unwarranted and overzealous attempts to collect a $402.35 balance on a hospital bill constituted, first, extreme and outrageous conduct causing Mrs. Bemel severe emotional distress, and second, a wrongful invasion of her right of privacy. Both theories were submitted to the jury, which awarded Mrs. Bemel $1,000 compensatory damages and $4,000 punitive damages. Neither award is challenged as being excessive, but three other asserted errors are argued as grounds for reversal.

First, we treat two of the points together, because there was only a general objection to the instructions, presenting no point for appellate review. ARCivP Rule 51; *Capital Steel Co.* v. *Foster & Creighton Co.,* 264 Ark. 683, 574 S.W. 2d 256 (1978). The same question, however, was raised by the appellant's motion for a directed verdict, which the court denied. We therefore consider the sufficiency of the evidence to support either theory of recovery.

Mrs. Bemel testified that the bill originated in March, 1975, when her son shot himself in an unsuccessful suicide attempt and was hospitalized. Most of the bill was paid by insurance. The remainder had been reduced by Mrs. Bemel's payments before it was assigned to the appellant for collection. She testified that she was harassed by Collection Consultants from January to November, 1976, when the creditor brought suit in a municipal court for $272.35. During some ten months she received about 50 collection letters from the appellant. She did not keep any of the letters and does not describe them as having been offensive in any respect except in number.

Her real grievance arises from about 70 telephone calls she allegedly received during the period. She worked at her

job until midnight and usually slept until about 10 a.m., but over her protests the appellant's employees repeatedly called at her home at 7:00 o'clock or later, awakening her. There were also many calls at her place of employment, also over her objections. She testified that the calls so upset her, by causing flashbacks to her son's suicidal attempt, that she was unable to work for 15 to 30 minutes at her office or had to go to bed crying at her home. Her son provided some corroboration.

Mrs. Bemel also testified that a person identifying himself as Bill Morgan began calling in late July, saying that he was working out of the prosecuting attorney's office and was going to garnishee her wages. At times Morgan left his number. When she returned the call the telephone was answered with "Collection Consultants," and she was connected with a person whose voice was that of Bill Morgan. At first Morgan called four or five times a month, but later he was calling as often as ten times a month.

The defendant's witnesses admitted having sent letters and having made calls to Mrs. Bemel, but their records, purportedly complete, indicated that the letters and calls were comparatively infrequent. They denied any reference to the prosecuting attorney's office, but did admit that fictitious names were customarily used by the individual collectors to avoid being called at home after working hours — one of the same harassments that Mrs. Bemel complained about. The conflicting testimony raised questions of fact for the jury to determine.

We need not consider the tort of outrageous conduct, discussed fully in the Restatement of Torts (2d), § 46 (1977), because the jury could have found a wrongful invasion of privacy. We recognized such a cause of action in *Olan Mills* v. *Dodd*, 234 Ark. 495, 353 S.W. 2d 22 (1962). In *Dodrill* v. *Ark. Democrat Co.*, 265 Ark. 628, 637, 590 S.W. 2d 840 (1979), we quoted the basic principles stated in § 652A of the Restatement. This language from Comment *d* of § 652B supports the cause of action in the present case:

There is likewise no liability unless the interfer-

ence with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

The appellant's remaining contention is that Mrs. Bemel's lawyer made an impermissible "golden-rule" argument to the jury. The appellant's motion for a new trial submitted a transcript of the opening paragraphs of opposing counsel's closing argument, the record ending with this language:

> Now to decide this lawsuit, I think you're going to have to put yourself in the shoes of Geneva York Bemel
> . . .
> Defense Counsel: Your Honor, I hate to interrupt, but Counsel's well aware that that type of argument is improper.
> The Court: Your objection will be overruled at this point. Go ahead.

There is no indication of how counsel's argument proceeded from that point on.

We have recognized the impropriety of a golden-rule argument such as counsel's urging the jurors to award what they themselves would take for the life of their father or husband or wife. *Missouri Pac. R.R.* v. *McDaniel,* 252 Ark. 586, 483 S.W. 2d 569 (1972). Here, however, the argument was cut off after counsel had merely said that he thought the jurors were going to have to put themselves in the plaintiff's shoes. That bare remark falls decidedly short of being reversible error.

Affirmed.