Guy P. SMITH and Lora L. Smith *v.* Joshua PETTIT

89-186                                          778 S.W.2d 616

Supreme Court of Arkansas
Opinion delivered October 30, 1989

246

*James O. Strother*, for appellants.

*Huckaby, Munson, Rowlett & Tilley, P.A.*, by: *Beverly A. Rowlett*, for appellee.

ROBERT H. DUDLEY, Justice. Appellant Guy Smith sought damages for an alleged permanent neck and back injury, loss of earnings and earning capacity, past and future pain and suffering, and past and future medical expenses as a result of a car wreck. His wife, appellant Lora Smith, additionally sought damages for loss of consortium. The jury assessed damages in the amount of $1,711.64, the amount of the medical bills. We affirm the judgment.

In the first point of appeal, appellant Guy Smith argues that the trial court abused its discretion in refusing to grant a new trial because of the inadequacy of his award. ARCP Rule 59(a)(5) provides: "A new trial may be granted . . . for any of the following grounds materially affecting the substantial rights of such party: . . . (5) error in the assessment of the amount of recovery, whether too large or too small; . . . ." In this case the appellee admitted liability. When the primary issue is the alleged inadequacy of the award, rather than a question of liability, we will sustain the trial judge's denial of a new trial unless there is a clear and manifest abuse of discretion. *Warner* v. *Liebhaber*, 281 Ark. 118, 661 S.W.2d 399 (1983). As explained in *Warner, supra*, in a review of the trial court's discretion in denying a new trial because of alleged inadequacy, an important consideration is obviously whether a fair-minded jury might reasonably have fixed the award at the challenged amount. Here, viewing the facts in the light most favorable to appellee, there was evidence from which a fair-minded jury might reasonably have concluded that the amount of the medical bills was the only

damage suffered by appellant Guy Smith.

With regard to his alleged injuries and pain and suffering, appellant admitted that he did not miss any work as a result of the accident, except for the time at the doctor's office; that he had been involved in at least three previous automobile collisions; and that he had previously fallen off a telephone pole. He further testified that he was promoted from an hourly position to one in management approximately one month following the accident; there was some stress associated with his new position; and he works longer hours now than he did in his hourly job. His doctor testified that anyone who is under stress can have stress headaches and neck pain; there were no real objective findings except an MRI test which possibly showed a spur-like condition; there was no way of determining if the spur was a result of the collision; spurs can occur as a result of trauma or as a result of routine wear and tear; he did not find arthritis in the place you normally see it in whiplash injuries; that his rating of 5% permanent disability for appellant was not based upon American Medical Association guidelines; and appellant had continued to improve.

With regard to his claim of loss of earnings and earning capacity, appellant testified that his promotion to management had increased his pay.

Based upon the foregoing, we cannot say the court abused its discretion in denying appellant Guy Smith's motion for a new trial.

The appellant also argues under this point that counsel for appellee made remarks which might be interpreted as an indication that appellee did not have insurance. However, there was no objection to the remarks and, therefore, the issue was not preserved for appeal.

Next, appellant Lora Smith argues that the trial court abused its discretion in refusing to grant her a new trial because the verdict that she take nothing for loss of consortium was clearly contrary to the preponderance of the evidence and law. The trial court ruled correctly.

The only evidence concerning the alleged loss of consortium came from the appellant Lora Smith, appellant Guy Smith, and Lora Smith's mother. In a comparable case, *Waterfield* v.

*Quimby*, 277 Ark. 472, 476, 644 S.W.2d 241 (1982), the injured wife was awarded $1,000.00, but her husband was awarded nothing for loss of consortium. In language applicable to the case at bar, we wrote:

> With respect to the issue of whether the verdict is inconsistent because no loss of consortium recovery is awarded to the spouse of the injured party, we agree with the cases holding that the jury need not, as a matter of law, give a pecuniary award for loss of consortium where damages are awarded to the injured spouse. It appears there is no fixed standard for ascertaining compensatory damages for loss of consortium. [citations omitted] Further, the only testimony on the loss of consortium was that of the appellants. The jury is not required to believe the testimony of any witness, particularly interested parties, since the testimony of interested parties is considered disputed as a matter of law.

Last, appellants argue that the trial court erred in ruling that statements made by appellee's attorney did not constitute a golden rule argument. Again, the trial court ruled correctly.

A golden rule argument suggests to jurors that they place themselves in the position of a party. *See* Annotation, *Prejudicial Effect of Counsel's Argument, in Civil Case, Urging Jurors to Place Themselves in the Position of Litigant or to Allow Such Recovery as They Would Wish if in the Same Position,* 70 A.L.R.2d 935. An example of such an argument is, "Would you take $15,000 for your father's life?" *Mo-Pac R.R. Co.* v. *McDaniel,* 252 Ark. 586, 483 S.W.2d 569 (1972). Or, conversely, "How would you like to have $15,000 taken out of your pocket?"

The appellant contends the last two sentences of the following argument constitute a golden rule argument:

> When we talk about the strain/sprain syndrome and it seems strange to me that on the day of the accident the man says I really didn't think I was hurt. The next day he says I really didn't think I was hurt. The next day he says I didn't think I was hurt. He has gone to work two straight days and finally on the 27th he has decided he's hurt. Ladies and gentlemen, some of you have sprained or strained your

ankles; how bad did it hurt right then? These are all bones and muscles and ligaments; it's the same thing.

The argument is one which asks jurors to use their own experiences in every day life to decide when a sprain or a strain begins to hurt; it is not one which urges the jurors to deny recovery as they would wish if they were in the same position.

Affirmed.