Brenton R. PIERCY *v.* WAL-MART STORES, INC.

92-717                                                     844 S.W.2d 337

Supreme Court of Arkansas
Opinion delivered January 11, 1993
[Supplemental Opinion on Denial of Rehearing February 22, 1993.*]

*Dudley, J., not participating.

426

*Sam Sexton III*, for appellant.

*Daily, West, Core, Coffman & Canfield*, by: *Robert W. Bishop*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Brenton R. Piercy, raises multiple points for reversal of a jury verdict in favor of the appellee, Wal-Mart Stores, Inc. The points for reversal are meritless, and we affirm.

On October 10, 1988, Piercy claimed that he tripped on a bulge which was several inches high in an unsecured rug-mat at the entrance of a Wal-Mart store in Fort Smith. The mat, he testified, had been pushed up against a door through which customers passed in single file to enter the store. Because his father was directly in front of him, Piercy asserted, he could not see the mat and consequently tripped on it and fell on his left knee. He did not immediately report the injury because at first he did not believe that he had been injured. That night, he went to work and later testified that his leg hurt during his shift. He stated that

he thought he had suffered a hamstring injury.

The pain became progressively worse, and on October 19, 1988, Piercy went to see his regular physician, Dr. Ronald P. Robinson, who referred him to Dr. Stephen A. Heim, an orthopedic surgeon. Dr. Heim fitted Piercy with a full-length cast that covered the back of his leg. At this point, he had still not notified Wal-Mart of his injury.

When his leg did not improve, Piercy returned to Dr. Heim, who changed the cast and placed his leg in a brace. He remained in the brace for about two weeks, and his leg showed no sign of improvement. During this period, he testified that he "was in considerable pain" and was unable to walk on the leg and therefore was confined to a wheelchair. On November 7, 1988, Piercy went to see Dr. Douglas W. Parker, Jr., a second orthopedic surgeon, who examined him for five successive days. On the fifth day, Dr. Parker evaluated the leg and returned Piercy to his regular physician, Dr. Robinson, due to the infection. Dr. Robinson then called in a surgeon, a Dr. Hunton, who promptly sent him to St. Edward Mercy Medical Center in Ft. Smith to have his leg drained.

An operation was performed on Piercy's leg, and he remained in the hospital for eighteen days, spending part of that time in the intensive-care unit. He testified that, when he was dismissed, the "leg was not any better," and he required physical therapy. Six to eight weeks later, he was able to get up and walk with the assistance of a walker. From that, he progressed to crutches and, eventually, a cane, which he used for about a year-and-one-half. He stated that he still experiences pain and has a limp.

Piercy sued Wal-Mart for damages on grounds that the mat at the entrance had been negligently maintained and that this caused the accident. At trial, Wal-Mart denied any knowledge of the accident prior to a report by Piercy's father and presented proof that Piercy suffered from diabetes and had a history of various infections. Two days following a jury verdict in favor of Wal-Mart, Piercy's attorney made a shopping trip to the Wal-Mart store in question and observed that the mats at the entrance had been taped down. Piercy then moved for a new trial, asserting that the taping of the mats constituted newly discovered evidence.

The circuit court denied the motion.

## I. FAILURE TO GRANT NEW TRIAL MOTION

At trial, Wal-Mart presented considerable testimony on its internal safety procedures. As part of this defense, Wal-Mart's store manager, Roger Trover, responded to a question on direct examination about taping the entrance mats down:

> Well, actually, from a safety standpoint, from my perception, that would cause more of a risk than if they weren't taped down, because the tape could roll up or it could come unstuck or whatever, and represent more of a trip hazard than the mat, itself, would.

Because two days after the trial the mats were taped down at the store entrance, Piercy wants to use this information to impeach Wal-Mart personnel and urges that the circuit court abused its discretion in refusing a new trial based on newly discovered evidence.

■■ We do not agree. Rule 59(a)(7) of the Arkansas Rules of Civil Procedure states that a new trial may be granted because of "newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial. . ." A new trial based on newly discovered evidence, however, is not a favored remedy. *National Bank of Commerce* v. *Beavers*, 304 Ark. 81, 802 S.W.2d 132 (1991). Whether to grant a motion for new trial based on newly discovered evidence is within the sound discretion of the trial court, whose decision will not be reversed absent an abuse of that discretion. *Liggett* v. *Church of Nazarene*, 291 Ark. 298, 724 S.W.2d 170 (1987). When a trial court denies a motion for a new trial, the test is whether the verdict is supported by substantial evidence, giving the verdict the benefit of all reasonable inferences permissible under the proof. *Isbell* v. *Ed Ball Const. Co.*, 310 Ark. 81, 833 S.W.2d 370 (1992); *Scott* v. *McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988).

■ We have held that in a hearing on a motion for a new trial based on newly discovered evidence, the burden is on the movant to establish that he could not with reasonable diligence have discovered and produced the evidence at the time of the trial, that the evidence is not merely impeaching or cumulative, and

that the additional testimony would probably have changed the result of the trial. *See Rogers* v. *Frank Lyon Co.*, 253 Ark. 856, 489 S.W.2d 506 (1973); *see also E.E.O.C.* v. *Rath Packing Co.*, 787 F.2d 318 (8th Cir. 1986); *Chemical Delinting Co.* v. *Jackson*, 193 F.2d 123 (5th Cir. 1951); 6A *Moore's Federal Practice*, § 59.08[3], pp. 59-103 - 59-104 (1987); 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2808, p. 60 (1973).

■ Using these standards, the proof in question before us fails primarily for one reason. Piercy admits that he wants to use the new evidence to "totally impeach Wal-Mart's manager." The fact that new information has been discovered which might merely impeach or otherwise test the credibility of a witness is not a sufficient reason to warrant a new trial. There was no abuse of discretion in the circuit court's ruling.

## II. THE 'GOLDEN RULE.'

During Wal-Mart's closing argument, the defense counsel stated:

> All of [us] have a duty of care for our own safety, ordinary care. You can't just ignore the fact that you're approaching a curb or you're approaching some steps or you're approaching a doorway, that has a rug on the other side of it. You can't ignore that. You're duty bound to watch out where you're going and not be tripping and so forth. Now, the same standard of care applies to me as it does to Wal-Mart, and to you as it does to Wal-Mart. Now, what if somebody comes in your home and you've got a rug, there, a throw rug, we call them, at the door, maybe you've got an entryway through your garage or patio or whatever, and you've got a throw rug, there, for them to clean off their feet, before they come in on the good carpet. If some fellow comes in there and —

At that point, Piercy's attorney interrupted and urged that this violated the golden rule doctrine:

> Judge, this violates what is called the Golden Rule. He's trying to put the Jury into Wal-Mart's position, and that is not allowed in (the) province of law.

Following additional statements by counsel at a sidebar

conference, the court admonished the jury:

> Ladies and Gentlemen, the attorneys can draw what they feel are reasonable inferences from the testimony; what they say is not evidence, what they say is merely argument, how they interpret the evidence. You should remember the facts as you remember them. The attorneys have the right to try to persuade you to be — to go their way, but it's ultimately up to you as to what you believe to be the facts or don't believe to be the facts.

There was no objection by Piercy's attorney to this admonishment.

■ We question whether Piercy actually objected formally to Wal-Mart's closing argument, though he did voice his misgivings about it. Furthermore, Piercy did not object at all to the court's admonition to the jury. But, in addition to these procedural lapses, we do not believe that reversible error occurred. We have previously defined the golden rule doctrine:

> A golden rule argument suggests to jurors that they place themselves in the position of a party. (Citation omitted.) An example of such an argument is, "Would you take $15,000 for your father's life?" (Citation omitted.) Or, conversely, "How would you like to have $15,000 taken out of your pocket?"

*Smith* v. *Pettit*, 300 Ark. 245, 248, 778 S.W.2d 616, 618 (1989). Based on this definition, Wal-Mart's counsel was perilously close to consummating a golden rule argument when Piercy's counsel cut him off.

A comment apposite to this case appears in one of our previous cases:

> We have recognized the impropriety of a golden-rule argument such as counsel's urging the jurors to award what they themselves would take for the life of their father or husband or wife. (Citation omitted.) Here, however, the argument was cut off after counsel had merely said that he thought the jurors were going to have to put themselves in the plaintiff's shoes. That bare remark falls decidedly short of being reversible error.

*Collection Consultants, Inc. v. Bemel*, 274 Ark. 223, 226, 623 S.W.2d 518, 520 (1981).

Similarly, in the present case, counsel for Piercy halted Wal-Mart's allusion to the jurors' personal experiences in midstream. As in *Bemel*, the argument of Wal-Mart's attorney falls short of reversible error.

### III. ORDER OF TRIAL

Piercy further claims that the circuit court allowed Wal-Mart to present its case-in-chief during Piercy's own case-in-chief and that this action violated Ark. Code Ann. § 16-64-110 (1987), which governs the order of trial. The issue arose when Wal-Mart requested, after the noon recess, that the circuit court allow it to recall Piercy for several additional questions on cross-examination while Piercy was still putting on his case. Piercy's counsel objected to this, and the circuit court overruled the objection.

■■ Trial courts are endowed with authority to exercise reasonable control over the order of interrogating witnesses. Ark. R. Evid. 611(a). We have held that Rule 611(a) vests considerable discretion in the trial court in the regulation of the mode and order of interrogating the witnesses and presenting evidence. *Freeman* v. *Anderson*, 279 Ark. 282, 285, 651 S.W.2d 450, 452 (1983). In *Freeman*, we found no abuse of discretion when the trial court allowed a police officer to return to the witness stand after having been excused and released from the witness rule so that he could testify about his qualifications to estimate the repair cost to an automobile. The same holds true in this case. There was no abuse of discretion.

### IV. HEARSAY OPINION

Piercy contends that he was required to testify that one of his physicians, a Dr. Holmes, told him in 1989 that he should not have any trouble walking on the injured leg. He urges that the admission of this hearsay was a blatant violation of Ark. R. Evid. 801 and that there is no applicable exception under Ark. R. Evid. 803.

Wal-Mart counters that the purpose of the question about Dr. Holmes's evaluation related to Piercy's *motive* for seeking a

second opinion before the trial from Dr. Douglas Parker, whom he had not seen in two-and-one-half years. Dr. Holmes had told Piercy that he should not have difficulty walking on the leg "later on." Piercy then sought a second opinion, which he testified to on cross-examination:

> Q: Now, did your going back to Dr. Parker in 1991, did that have anything to do with this lawsuit being set for trial?
>
> A: Yes, sir, it did.
>
> Q: So, because this lawsuit was set for trial, you went back to see Dr. Parker?
>
> A: Yes, sir, my attorney requested that I get another leg evaluation.

■ The circuit court did not err in overruling Piercy's objection on hearsay grounds. The fact that Dr. Holmes advised Piercy that he would be able to walk on the leg was offered on cross-examination to prove why Piercy sought a second opinion from Dr. Parker prior to trial. As such, it was not offered, according to Wal-Mart, to prove that Piercy could walk in the future, but rather to show why he went to Dr. Parker. Statements proving motive are not excluded by the hearsay rule. Ark. R. Evid. 803(3); *see also Tandy Corp.* v. *Bone,* 283 Ark. 399, 678 S.W.2d 312 (1984). This ruling was discretionary with the circuit court, and that discretion was not abused.

## V. RESPONSES TO INTERROGATORIES

Piercy also contends that the circuit court erred in not allowing him to introduce certain responses to interrogatories by Wal-Mart. Piercy's Interrogatory 5 asked whether any persons had slipped on mats at the Wal-Mart store in question over the past five years and Interrogatory 11 asked if any persons had fallen on mats at any Wal-Mart stores. Wal-Mart responded to both interrogatories by objecting to them as overly broad, burdensome, irrelevant, and not likely to lead to admissible evidence. Piercy sought to present these objections to the jury, and Wal-Mart objected on relevancy grounds. The circuit court sustained Wal-Mart's objection.

■ We observe no abuse of discretion in the court's ruling. Piercy would have us believe that Wal-Mart's objections to these

interrogatories was an admission of sorts but cites us to no authority supporting his position. We do not agree. Wal-Mart was perfectly within its rights to object to any interrogatory. If the objection was unreasonable or without basis, then Piercy's remedy was to move to compel a response.

Piercy is correct that, under Ark. R. Civ. P. 33, *answers* to interrogatories may be used to the extent permitted by the rules of evidence. However, objections to interrogatories are not answers. The circuit court correctly sustained Wal-Mart's objection at trial.

Piercy further attempted to introduce into evidence answers to other interrogatories such as answers to Interrogatories 19 and 20 relating to the positioning and cleaning of the mats at the store entrance. Answers to interrogatories are hearsay and generally are inadmissible as part of a party's case-in-chief. *See Hunter v. McDaniel Bros. Constr. Co.*, 274 Ark. 178, 623 S.W.2d 196 (1981). Nevertheless, such answers may be admissible to impeach the answering party. Here, however, no attempt was made by Piercy to impeach Wal-Mart personnel at trial. The circuit court correctly refused to allow the answers to Piercy's interrogatories into evidence.

## VI. ADDITIONAL MEDICAL TREATMENT

For his sixth point, Piercy argues that evidence was admitted of twelve instances of his hospitalization, before and after the Wal-Mart accident, and that this was prejudicial and irrelevant. He cites us to the following principle:

> [W]hen a defendant's negligence aggravates, or brings into activity, a dormant or diseased condition or one to which the injured person is predisposed, the defendant is liable to the injured person for the full amount of the damages which ensue, notwithstanding such diseased or weakened condition.

*Owen v. Dix*, 210 Ark. 562, 196 S.W.2d 913, 915 (1946).

This is a correct statement of the law. However, the issue here, unlike the *Dix* case, is whether the twelve hospitalizations were at all relevant to the trial. The circuit court found that they were, and we cannot say that this ruling was error.

Piercy had a preexisting diabetic condition, and Wal-Mart argues that a diabetic condition for which Piercy was hospitalized correlates directly with poor eyesight due to cataracts and Piercy's resulting fall. It further contends that Piercy had been hospitalized for various infectious conditions such as cellulitis, and this evidences a susceptibility to infection such as that which afflicted Piercy's leg. Certainly, medical history which relates to the cause of an alleged accident or to resulting injury is relevant information for the jury to assess.

■ Rulings on the relevancy of evidence are discretionary with the trial court and are not to be reversed absent an abuse of discretion. *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). Given the apparent relevance of the medical records, it is difficult to conclude that the court abused its discretion.

## VII. SPECULATIVE QUESTIONING

Piercy was asked on direct examination: ". . .[I]f that carpet, that piece of rug, had been flat at Wal-Mart that day, would you have tripped over it?" Wal-Mart promptly objected to the "speculation," and the court sustained the objection and added that it was interested only in knowing what the facts were.

■ We do not agree with Piercy that he could answer this question as a lay expert under Ark. R. Evid. 701. Rule 701 provides for opinion testimony rationally based on the perception of the witness. In this case, Piercy testified that the mat was not flat but had been pushed up to the door. Hence, the question was hypothetical and did not pertain to the circumstances which, Piercy contended, caused the accident.

While allowing Piercy to testify that he would not have tripped over a flat mat seems relatively innocuous to us, we cannot say that the circuit court's disallowance of this testimony was error or an abuse of discretion. Had Piercy responded negatively to the question, instead of being helpful to the jury, this would have fallen more readily into the category of a meaningless assertion. *See Felty* v. *State*, 306 Ark. 634, 816 S.W.2d 872 (1991).

Affirmed.

DUDLEY, J., not participating.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
FEBRUARY 22, 1993

*Sam Sexton III*, for appellant.

*Daily, West, Core, Coffman & Canfield*, by: *Robert W. Bishop*, for appellee.

ROBERT L. BROWN, Justice. Petitioner Brenton R. Piercy raises several points on rehearing. The petition is denied but additional comment on the use of answers to interrogatories at trial is required.

We stated in our opinion that answers to interrogatories are generally inadmissible as hearsay in a party's case-in-chief, though they may be used for impeachment purposes, and we cited *Hunter* v. *McDaniel Bros. Constr. Co.*, 274 Ark. 178, 623 S.W.2d 196 (1981) for the proposition. That statement is only partially correct. Answers to interrogatories may qualify as admissions by a party-opponent which are not hearsay, as

defined, and therefore may constitute substantive evidence and be admissible in a party's case-in-chief. Ark. R. Evid. 801 (d)(2). If an objection to such answers is raised on foundational or other grounds, it then becomes a matter for the trial court's discretion. Answers to interrogatories are also admissible for consideration in summary judgment proceedings. Ark. R. Civ. P. 56(c).

In the present case, the circuit court denied admission of all answers to interrogatories as part of Piercy's case-in-chief on grounds of irrelevancy. On appeal, Piercy contends that answers to interrogatories 19 and 20 were relevant and constituted admissions under Rule 801 (d)(2). That precise rule of evidence was not argued to the circuit court; nor were the two answers to interrogatories 19 and 20 specifically brought to the court's attention. Moreover, Wal-Mart's store manager, Roger Trover, who verified the answers, was called as a witness by Piercy. However, no attempt was made by Piercy to impeach Trover with the answers. Under the circumstances, the circuit court did not abuse its discretion in refusing to admit the answers to interrogatories into evidence.

DUDLEY, J., not participating.