2009 Ark. App. 283

**W.E. PENDER & SONS, INC., Appellant,**

v.

**Burton LEE, Appellee.**

**No. CA 08–403.**

Court of Appeals of Arkansas.

April 15, 2009.

Rehearing Denied May 20, 2009.

---

Kilpatrick, Williams, Smith & Meeks, LLP, by: Gene Williams, Little Rock, for appellant.

Quattlebaum, Grooms, Tull & Burrow, PLLC, by: Steven W. Quattlebaum and Jennifer L. Wethington, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

During the installation of a water well at his rural residence, appellee, Burton Lee, was injured when a fiberglass mat flew out from under a pipe truck driven by one of appellant's employees, Jonathan McGinty. Lee brought a negligence action against appellant, W.E. Pender & Sons, Inc. d/b/a Acklin Drilling. The case was tried to a jury, which returned a verdict in favor of Pender & Sons. Lee filed a motion for new trial, asserting newly discovered evidence in the form of a post-trial letter and an alleged oral admission from McGinty as the basis. Following a hearing, the trial court granted the motion for new trial. This appeal followed, with Pender & Sons contending that 1) there was no newly discovered evidence; and, even if McGinty's post-trial letter and alleged oral statement were "newly discovered evidence," 2) it would be merely impeaching or cumulative; and 3) it would not have changed the result of the trial. Lee also filed a cross-appeal, contending that the trial court erred in excluding McGinty's admission of fault, given during his deposition. On the direct appeal, we reverse the trial court's grant of a new trial; on the cross-appeal, we affirm the exclusion of the testimony regarding fault.

Lee hired Pender & Sons to drill a well on his property. Pender & Sons placed fiberglass mats around the drilling site in order to provide traction for the heavy

trucks that were used in the drilling. When the drilling was completed, McGinty began to back up the pipe truck; one of the fiberglass mats flew out from under the right-rear tire and struck Lee, injuring his leg. At trial, McGinty, called as a witness by Lee, testified in pertinent part:

> At the time of the accident I got in the truck, waited for air pressure to build up for the brakes. I put my foot on the brake, released the air brakes, let out on the clutch real gently until I felt the transmission catch, and gently let off the brake so the truck wouldn't roll forward, and started giving a little bit of acceleration, holding a steady accelerator, continuing to let out on the clutch, trying not to spin the tires, and one of the tires spun. The tire did not spin before the mat came out. There was no warning of a problem. The truck did not lurch. I did not gun the engine or race the motor. I had moved the truck like that in the past without problems. I had no reason to believe the mat would go out to the side of the truck. I had never heard of such a thing happening. I had driven the pipe truck before.

Although he testified that the truck did not move when he let the clutch out, when he was shown a photograph of the scene, he then stated that if the truck moved, he did not remember it. He agreed that one of Lee's photograph exhibits "shows the truck appears to be directly over the well," and that the bed of the truck could not have been directly over the well while they were drilling the well. Thus, he acknowledged that the truck had been moved.

Travis Acklin, testifying on behalf of Pender & Sons, stated that while he did not remember moving the truck at first, after looking at the photographs and seeing the well underneath the pipe truck, the pipe truck would had to have been moved

approximately four to five feet. He said that they "must have backed the truck up one time before McGinty got back in it and backed it up again spinning the board out." He explained that he motioned for McGinty "to come on back"; that McGinty began to accelerate gently and began to engage the clutch; and that as McGinty engaged the clutch, "in just a split second the wheels spun and kicked the mat out." Acklin said that the mat flew "out to the side," just above the ground, and struck Lee. He acknowledged that he could not see McGinty's foot as he eased off the clutch; that the truck put a lot of velocity to the board; that he had never seen that happen before; that they "operated the truck the same way as we always did"; that McGinty "did not let the clutch out faster than I think he did" and that he could hear the sound of the engine pulling down as McGinty was gradually releasing the clutch; and that he was directing McGinty, motioning him to come back.

Lee testified on his own behalf at trial:

> After the well was dug I used my tractor to pull the dirt away. I had just pulled my tractor around and parked it and got off of it. The pipe truck did not get moved during that time. There was absolutely not enough time for somebody to put a board right behind the front wheel before I got off my tractor and got hit.

> I testified in my deposition that I couldn't give a yes or no on whether they had just begun to back up the truck as I got off my tractor. I really don't remember. I remember walking and getting off my tractor and walking around the front, and the next thing you know I'm on the ground.

Lee based his motion for a new trial on the following two items of "newly discovered evidence": 1) Lee's affidavit asserting an alleged post-trial oral admission by

McGinty to Lee that McGinty "had 'gunned' the engine of the pipe truck when backing it out of the job site, which caused the rear wheel to spin and shoot the Mud–Traks board out from under it, causing [Lee's] injuries"; 2) a written statement from McGinty in which he stated:

> After seeing the pictures in court on the 28–29 of August and trying to remember what happened the day of the accident. My testimony on the dates above were not completely true. I stated that the pipe truck was never moved after the well was completed. That was not true. At the beginning of the trial I was told the pipe truck was never moved. I couldn't remember so I assumed it wasn't. The accident happened a little over four years ago. I gave my deposition nineteen months ago. In order for me to remember everything I said in my deposition or events that happened on the day of accident, I would've needed copies of the deposition and copies of the photographs. I had neither! In my opinion this is asking a lot from one person.

At the hearing on Lee's motion, McGinty testified in part, "I never gunned the truck, but yes, I had to accelerate the truck to try to get it to move. [Lee's] testimony about what I said on August 30 is not true. ... I did not tell him I lied about gunning the engine of the truck. I first learned yesterday afternoon he was saying I lied about gunning the engine of the truck."

### Direct Appeal

In challenging the trial court's grant of a new trial, Pender & Sons contends that the ruling should be reversed because 1) there was no new evidence about either the location of the truck or the "gunning" of the engine, and, even if the alleged oral statement by McGinty and his written statement were newly discovered evidence, 2) it would be merely impeaching or cumulative, and 3) it would not have changed the result of the trial.

Rule 59 of the Arkansas Rules of Civil Procedure provides in part:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds *materially affecting the substantial rights of such party:* ... (7) newly discovered evidence *material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial* [.]

(Emphasis added.) As our supreme court explained in *Roetzel v. Brown*, 321 Ark. 187, 190, 900 S.W.2d 185, 186 (1995):

> Rule 59(a)(7) provides that a new trial may be granted on grounds of "newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial." A new trial based on newly discovered evidence is not favored. The decision to grant a new trial based on newly discovered evidence is a decision within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. At the hearing on the motion for new trial based on newly discovered evidence, *the burden is on the moving party to establish he or she "could not with reasonable diligence have discovered and produced the evidence at the time of trial, that the evidence is not merely impeaching or cumulative, and that the additional testimony would probably have changed the result of the trial."*

(Emphasis added & citations omitted.) Abuse of discretion is discretion improvi-

dently exercised, *i.e.*, exercised thoughtlessly and without due consideration. *Id.*

 [6]Accordingly, to establish his entitlement to a new trial, Lee had the burden of first proving that the evidence he was relying upon in support of his motion was truly "new," *i.e.*, that he "could not with reasonable diligence have discovered and produced the evidence at the time of trial." The two items of "new" evidence are McGinty's post-trial written statement, which discussed the location of the truck, and his alleged oral statement to Lee that he had lied about gunning the engine (a statement which McGinty disputed making and about which he said nothing in his written statement). We are not convinced this evidence is properly categorized as "newly discovered."

The written statement is a reiteration of testimony that McGinty provided at trial. Upon examining a photograph during his original trial testimony, McGinty acknowledged that he must have been mistaken about the truck not being moved because the photograph showed that it had been moved approximately four to five feet. His post-trial written statement adds nothing significant to his trial testimony.[1] Likewise, the assertion in Lee's affidavit of the alleged oral statement by McGinty that he had in fact "gunned" the engine was denied by McGinty, thus turning the state-

ment's very existence into a "he said/he said" dispute. In every single statement on the subject by McGinty, including his testimony at the motion hearing, he denied "gunning" the [7]engine.[2] This type of evidence could, with reasonable diligence, have been discovered and produced at the time of trial through cross-examination and other methods of attacking unfavorable testimony.

 Even if we were to conclude that both McGinty's post-trial letter and alleged oral statement were "newly discovered evidence," Pender & Sons contends that it would be merely impeaching or cumulative. We agree.

At a retrial, with the addition of this "new evidence," McGinty would presumably repeat what he had already acknowledged at the original trial, together with Acklin, that the truck had been moved approximately four or five feet—not during the injury episode, but prior to that incident. Thus, it is clear that McGinty's written statement would be merely cumulative. In addition, at a retrial, McGinty would presumably continue to deny that he "gunned" the engine, and Lee's testimony about McGinty's alleged post-trial statement would be used to try to impeach McGinty's testimony. Thus, this alleged oral statement would be merely impeaching.[3]

---

1. Marshall, J., dissenting, interprets McGinty's trial testimony on truck movement to have "wavered a bit" when "confronted with photographs" and then states that McGinty gave "revised testimony" at the hearing on motion for new trial.

2. Notwithstanding similar references by both dissenters, neither the record nor the majority opinion contain any McGinty post-trial admission that he "gunned the engine."

3. In fact, as part of its rationale for granting Lee a new trial, the trial court emphasized "impeachment purposes":

THE COURT: And as I recall, he changed his testimony. I'm not saying there was anything untoward. He changed his testimony between the time he took the deposition and the moment that he walked into the courthouse as I recall about that, Mr. Williams. It's a close call. I just think that the interests of justice are best served by utilizing the line of cases that say, I'm going to use my discretion, and we're just going to try it all over again. And Mr. McGinty can say everything that he believed happened, and Mr. Lee can say what he says. Everybody's got everybody's prior testimony *for impeachment purposes*, and then the

As explained in *Roetzel, supra,* even if evidence is new, if it is merely cumulative or impeaching, it does not satisfy a moving party's burden of establishing that there is newly discovered evidence that would justify a new trial. That is the situation we have here. Accordingly, we hold that the trial court abused its discretion in granting Lee's motion for a new trial. We have determined that Lee did not satisfy his burden of proving that the evidence he relied upon was truly newly discovered evidence that was not merely impeaching or cumulative.

In light of our holdings concerning Pender & Sons' first two contentions, it is not necessary to address its third contention, *i.e.,* that the evidence relied upon by Lee would not have changed the result of the trial.

### Cross–Appeal

In his cross-appeal, Lee contends that the circuit court abused its discretion in excluding McGinty's deposition testimony because it was substantial evidence of Pender & Sons' liability. We disagree.

The trial court has broad discretion when it comes to the admissibility of evidence. *Meins v. Meins,* 93 Ark.App. 292, 218 S.W.3d 366 (2005). The appellate court will not reverse the lower court's ruling on an evidentiary issue unless the appellant can show that the court abused its discretion. *Id.* In order to show abuse of discretion, the appellant must demonstrate that the trial court acted improvidently, thoughtlessly, or without due consideration. *Id.* Additionally, the appellate court will not reverse an evidentiary ruling absent a showing of prejudice. *Id.*

In his deposition, McGinty stated:

jury can just make a decision. Mr. McGinty now has an independent recollection that is significantly different, and I think the

Q. And has Mr. Lee ever said to you whether this was or was not anyone's fault?

A. Well, it was our fault.

Q. Okay. Did he ever say that to you?

A. I can't remember. But I think he knew.

Q. Right. And that's kinda why we're here today, don't you think?

A. Yes.

Q. Okay. And we can count on your testimony in that regard, that—.

A. (Affirmative nod).

Q. Okay.

A. Yes, ma'am.

After considering Pender & Sons' motion in limine, the trial court excluded McGinty's deposition testimony from the actual trial, reasoning that it invaded the jury's province. We find no abuse of discretion in the trial court's exclusion of this evidence.

Rule 701 of the Arkansas Rules of Evidence provides:

Opinion testimony by lay witnesses.

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Our supreme court explained in *Thompson v. Perkins,* 322 Ark. 720, 724–25, 911 S.W.2d 582, 584–85 (1995):

We have said that Rule 701 is not a rule against conclusions; it is a rule conditionally favoring them. *Carton v. Missouri Pac. R.R.,* 303 Ark. 568, 798

trier of fact needs to decide whether they think that makes a difference or not.
(Emphasis added.)

S.W.2d 674 (1990). In *Carton v. Missouri Pac. R.R.*, we said:

> [E]ven if the witness does have the requisite personal knowledge, any inferences or opinions he expresses must thereafter pass the rational connection and "helpful" tests of Rule 701. "The rational connection test means only that the opinion or inference is one which a normal person would form on the basis of the observed facts. He may express the opinion or inference rather than the underlying observations if the expression would be 'helpful to a clear understanding of his testimony or the determination of a fact in issue.'" If, however, an opinion without the underlying facts would be misleading, then an objection may be properly sustained. (Citations omitted.) Further, testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. A.R.E. Rule 704; *Davlin v. State*, 320 Ark. 624, 899 S.W.2d 451 (1995).

Here, appellant's testimony regarding the right-of-way was based on observed facts provided in his testimony—the location of his motorcycle, the oncoming vehicles in the northbound lane, and the yield sign. *His opinion that appellee had the right-of-way is one which a normal person would form on the basis of the facts observed, and his opinion testimony did not mandate a legal conclusion.* See *Davlin v. State, supra; Carton v. Missouri Pac. R.R., supra.* Finally, his opinion was helpful to the determination of a fact in issue, whether appellee was negligent. Thus, the trial court did not abuse its discretion in admitting the testimony. *See Scroggins[Scoggins] v. Southern Farmers' Ass'n,* 304 Ark. 426, 803 S.W.2d 515 (1991); *see also Robinson v. Bump,* 894 F.2d 758 (5th Cir.1990) (admission in negligence action of lay opinion that defendant was "in total control" of vehicle not an abuse of discretion); *Young v. Illinois Cent. Gulf R. Co.,* 618 F.2d 332 (5th Cir.1980) (testimony from lay witnesses concerning their impression of condition of railroad crossing improperly excluded).

(Emphasis added.) The word "fault" is defined as:

> 1. An error or defect of judgment or of conduct; any deviation from prudence or duty resulting from inattention, incapacity, perversity, bad faith, or mismanagement. See NEGLIGENCE. CF. LIABILITY. 2. *Civil law.* The intentional or negligent failure to maintain some standard of conduct when that failure results in harm to another person.

*Black's Law Dictionary* 641 (8th ed. 2004).

Here, the trial court clearly regarded McGinty's deposition testimony regarding "fault" as raising the possibility that it would mandate a legal conclusion, and therefore excluded it. We find no abuse of the trial court's discretion in reaching that conclusion.

Reversed on direct appeal; affirmed on cross-appeal.

PITTMAN, ROBBINS, GRUBER, and HENRY, JJ., agree.

MARSHALL and BROWN, JJ., would affirm on direct appeal and on cross-appeal.

HART and BAKER, JJ., would affirm on direct appeal and reverse on cross-appeal.

HART, J., dissenting.

On direct appeal, the majority reverses the circuit court's granting of a new trial to Burton Lee, holding that the court manifestly abused its discretion. On cross-appeal, the majority holds that the court did not abuse its discretion in excluding an admission of fault made by one of the employees of W.E. Pender & Sons, Inc. I disagree with both conclusions.

*Direct Appeal.* The grant of a new trial is reversed only if the circuit court clearly or manifestly abused its discretion by acting improvidently or thoughtlessly without due consideration. *Carlew v. Wright,* 356 Ark. 208, 148 S.W.3d 237 (2004). Here, the record reflects that the trial judge conducted a lengthy hearing in which he personally questioned the defense's star witness, Jonathan McGinty, about McGinty's revelation that his testimony at trial was inaccurate. Only then did the trial judge order a new trial. I submit it is impossible to assert that the trial judge ruled thoughtlessly without due consideration.

We may affirm the circuit court's decision if there is a sound basis for the result reached by the court. *Regions Bank v. Griffin,* 364 Ark. 193, 217 S.W.3d 829 (2005). Rule 59(a) allows the granting of a new trial for "any irregularity in the proceeding ... by which the party was prevented from having a fair trial," and when the jury's verdict is "clearly contrary to the preponderance of the evidence." Here, Lee was prevented from having a fair trial, and further, the verdict was clearly contrary to the evidence, so the court's grant of a new trial should be affirmed.

The majority acknowledges that McGinty testified at the hearing on the motion for new trial that his testimony at trial regarding the movement of the truck was inaccurate. Instead, he had relied on what he was told by others, either the person who witnessed the accident, or the owner of the company, or the company's attorney. This evidence, and McGinty's post-trial admission that he gunned the engine—which was contrary to his trial testimony—goes to the essence of the case: what happened when the accident occurred. The majority speculates that the presentation of truthful testimony rather than untruthful testimony about the movement of the truck would not have changed the result of the trial. This conclusion may be acceptable to the majority, but I doubt the presentation of untruthful testimony would be acceptable to a jury. Nor is it acceptable to this dissenting judge. This cannot be anything other than an irregularity that prevented a fair trial.

Furthermore, the verdict was clearly contrary to the evidence. A four-by-eight foot, 110 pound, fiberglass mat, designed to give traction in mud, spun out from underneath the right rear tire of the truck and struck Lee in the legs, causing him injury. McGinty testified at trial that he put his foot on the brake, released the air brakes, "real gently" released the clutch until he felt the transmission catch, "gently" released the brake so that the truck would not roll forward, gave the truck "a little bit" of acceleration, held "a steady accelerator," and continued to release the clutch trying not to spin the tires.

The majority and the jury have concluded that—contrary to the laws of physics—a four-by-eight foot mat, weighing 110 pounds—without any appreciable force from a spinning tire—can be inexplicably ejected from underneath the dual wheel of a 23,000 pound single rear-axle truck, fly through the air several feet, careen into a tree, and still have sufficient force to ricochet in a different direction several feet and strike a bystander with enough force to break his leg. The only force that could

have been applied came from the force generated by the driver accelerating the truck motor and increasing the torque of the truck wheel, a force exclusively controlled by McGinty. Although we may not be physicists, common sense dictates that the force necessary to propel this heavy mat through the air to effect this result was many times greater than that testified to by McGinty. Accordingly, I conclude that granting of a new trial was proper, as the jury's verdict was clearly contrary to the evidence.

*Cross–Appeal.* Lee cross-appeals from a pre-trial ruling that excluded a statement made by McGinty during his deposition. During the deposition, McGinty was asked whether Lee had ever said to him whether or not the accident was or was not anyone's fault. McGinty replied, "Well, it was our fault." The court excluded McGinty's statement, concluding that it "invades the province of the jury." Lee argues that the circuit court abused its discretion in excluding this testimony.

Rule 701 provides that a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (1) Rationally based on the perception of the witness; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue." Rule 701 is not a rule against conclusions; it is a rule conditionally favoring them. *Thompson v. Perkins,* 322 Ark. 720, 911 S.W.2d 582 (1995). Further, Rule 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." But while opinion testimony may embrace the ultimate issue to be decided by the trier of fact, it cannot mandate a legal conclusion or tell the jury what to do. *Marts v. State,* 332 Ark. 628, 968 S.W.2d 41 (1998).

In concluding that the testimony on fault invaded the province of the jury, the circuit court failed to consider the applicable law. The court should have considered whether McGinty's deposition testimony was based on his observed facts. Further, the court should have considered whether the statement would have been helpful and aided the jury in determining a fact in issue, that is, *negligence,* especially in light of the fact that McGinty testified that he used only "a little bit" of acceleration on the truck. Further, the court should have considered whether the testimony would have mandated a legal conclusion, that is, whether Pender was *negligent. See Thompson, supra* (holding there was no abuse of discretion in allowing testimony regarding the right-of-way in a motor-vehicle accident, as the testimony was based on observed facts, did not mandate a legal conclusion, and was helpful to the determination of a fact in issue).

With regard to the question of whether McGinty's testimony on fault would have mandated a legal conclusion, I observe that the jury was instructed that *negligence* means "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do." The jury was also instructed that a "failure to exercise ordinary care is negligence," that "ordinary care" meant "the care a reasonably careful person would use," and that it was for the jury "to decide how a reasonably careful person would act." While the majority cites to *Black's Law Dictionary* for the definition of "fault," I do not see where in the record the jury was ever instructed that the term "fault" had any legal meaning, much less that it was the ultimate issue to be decided. Had McGinty, a fact witness, testified that he was *negligent,* then it would have been a closer question of whether he was testify-

ing on the ultimate issue, as the jury was instructed on the definition of *negligence. Gramling v. Jennings,* 274 Ark. 346, 625 S.W.2d 463 (1981) (holding that it was error to allow expert witness testimony that the defendant was not negligent). But that was not the testimony before the circuit court. Thus, the court should have considered whether McGinty's testimony on "fault" mandated a "legal" conclusion at all, whether it mandated a legal conclusion on *negligence,* and whether it told the jury that it had to find *negligence.*

Accordingly, I would affirm on the direct appeal and reverse on the cross-appeal.

BAKER, J., joins.

MARSHALL, J., dissenting.

Orders granting a new trial are as rare as hen's teeth. Their rarity is reflected in the extraordinary deference we owe the circuit court in this situation. As our court recognizes, we review for an abuse of discretion. Among other things, discretion abused is discretion exercised thoughtlessly and without due consideration. *E.g., Carlew v. Wright,* 356 Ark. 208, 212, 148 S.W.3d 237, 240 (2004). Deferential in general, that standard of appellate review embodies a spectrum of more or less deference depending on the nature of the judgment call under review. Henry J. Friendly, *Indiscretion About Discretion,* 31 EMORY L.J. 747, 783–84 (1982). Our precedent reflects this truth. When, as here, the circuit court grants a new trial, it is and should be extraordinarily difficult to demonstrate an abuse of discretion. *Carlew,* 356 Ark. at 212, 148 S.W.3d at 240; *Arkansas State Highway Commission v. Wood,* 102 Ark.App. 348, 351, 285 S.W.3d 256, 259 (2008). Everyone will have another day in court. The important judicial interest in finality must give way to the more important judicial interest in truth.

Viewing the case through this lens, as we must, we should affirm on direct appeal. After trial, the parties briefed the newly-discovered-evidence issues. The circuit court received the briefs, held a hearing, and took testimony. The court examined the documentary evidence. The court observed the demeanor of Lee and McGinty under counsel's questioning. The court questioned McGinty. And then the court decided, in light of all the material circumstances, that justice would be best served in this case by another trial. This record shows judicial discretion exercised carefully and thoughtfully, not discretion abused.

Our court has mastered this appeal as best we could from words on many pages. But we lack the feel for the case that comes from presiding over it. The deep question under Rule 59(a)(7) is whether the new evidence probably would have changed the trial's result. *Roetzel v. Brown,* 321 Ark. 187, 190, 900 S.W.2d 185, 186 (1995). No clear and certain answer exists to questions such as this. It is a matter of judgment. We should therefore defer to the court best situated to make the best judgment call.

Our court concludes that the post-trial evidence was not really new. I disagree. At trial, McGinty was firm initially that the truck never moved after the accident. Confronted with photographs, he wavered a bit. After trial, however, McGinty was firm that the truck was moved. As the circuit court recognized, this was a change. On deposition, at trial, and after trial, McGinty said he never gunned the engine. But Lee testified that, after the trial, McGinty admitted gunning the engine. This alleged admission was new. And it was on the critical issue in the case: what caused the truck to sling the mat? Neither McGinty's revised testimony about whether the truck moved or his alleged

admission about gunning the engine could have been discovered before trial. Lee did all he could and should have done by taking a thorough deposition of McGinty.

The court concludes that, in any event, the changed truck-location testimony was cumulative to Acklin's trial testimony, and thus will not support a new trial. *Roetzel,* 321 Ark. at 190, 900 S.W.2d at 186. If that were all there was to the matter, I might agree. But McGinty's post-trial letter reflects that his truck-location testimony, which we now know was wrong, was schooled by someone on the morning of trial. The circuit court was rightly concerned about his circumstance, which in my view brings the matter outside the usual situation of merely cumulative new evidence.

The court further concludes that McGinty's alleged "I gunned the engine" admission was merely impeaching evidence given his denial of it at the post-trial hearing. And thus, as impeachment, the alleged admission cannot support a new trial. *Roetzel* says this. 321 Ark. at 190, 900 S.W.2d at 186. Other cases do too. *E.g., Piercy v. Wal–Mart Stores, Inc.,* 311 Ark. 424, 428, 844 S.W.2d 337, 339 (1993); *Rogers v. Frank Lyon Co.,* 253 Ark. 856, 861, 489 S.W.2d 506, 509 (1973). But these words are *dicta,* not holding, in the circumstances here. No Arkansas case—until today—holds that a circuit court abuses its discretion by granting a new trial based on newly discovered impeachment evidence. That should not be the law in every situation. Whether new impeaching evidence justifies a new trial should instead depend on the circumstances. Here, it was no abuse of discretion for the circuit court to conclude that this impeaching testimony was a bomb.

Why this mat flew out from under the truck's wheel and hit Lee was the issue in this case. When the truck driver allegedly admits after trial that he gunned the truck's engine, the disputed admission is not merely impeaching. It goes to the core of the lawsuit. And it should support the circuit court exercising its well-informed discretion to grant a new trial. *Roetzel*'s dicta should give way in the face of good reasons and common sense.

Joined by Judges Baker and Brown, I respectfully dissent on reversing the circuit court's new-trial order.